UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRETT STEELE,

        Plaintiff,

v.

HERMAN MEYER, *et al.*,

        Defendants.

Civil Action No. 12-1867 (BAH)

Judge Beryl A. Howell

**MEMORANDUM OPINION**

This common law tort action stems from an alleged altercation between the plaintiff, Brett Steele, and the defendants, Herman Meyer ("Meyer") and Craig Deare ("Deare"), all of whom were, at the time of the alleged altercation on August 2, 2011, employed by the National Defense University's College of International Security Affairs ("CISA"). The case was removed to this Court by the defendants, pursuant to 28 U.S.C. §§ 1442(a)(1), 1446 (2006) and the Federal Employees Liability Reform and Tort Compensation Act of 1988, also known as the Westfall Act, 28 U.S.C. § 2679(d)(2) (2006). Pending before the Court are the plaintiff's Motion to Remand due to the alleged invalidity of the Westfall Act certification and the defendants' Motion to Dismiss, under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. For the reasons explained below, the plaintiff's Motion to Remand is DENIED and the defendants' Motion to Dismiss for lack of subject matter jurisdiction is GRANTED.

**I.    BACKGROUND**

    **A.    Factual History**

The plaintiff began work as an associate professor at CISA in August of 2010. Compl. ¶ 8, ECF No. 4-1. Over the following year, the plaintiff was told to modify his teaching style at

1

least twice in response to requests from his superiors. *Id.* ¶¶ 10–11, 18. The plaintiff alleges that during one meeting to address his teaching style and course content, he was verbally berated by CISA's Chancellor, Colonel Michael Bell ("Bell" or "the Chancellor"). *Id.* ¶ 17.

On August 2, 2011, the plaintiff was summoned to the Chancellor's office for a meeting at 11:00 a.m. *Id.* ¶ 21. Although the plaintiff denies that he was told the purpose of the meeting, *id.*, he had several months previously been advised by a superior that "he would be terminated," *Id.* ¶ 20. Present at that meeting were the Chancellor and both defendant Meyer, who served as CSI's Dean of Students, and defendant Deare, who served as CSI's Acting Academic Dean. *Id.* ¶¶ 2, 3, 25; Herman Meyer Aff. ("Meyer Aff.") ¶ 3, ECF No. 8-2; Craig Deare Aff. ("Deare Aff.") ¶ 3, ECF No. 8-3. The duties of both defendants include assisting the Chancellor with personnel matters. Meyer Aff. ¶ 3; Deare Aff. ¶ 3. The meeting's purpose was, in fact, to notify the plaintiff about his immediate placement on administrative leave prior to his termination. Meyer Aff. ¶ 3; Deare Aff. ¶ 3.

Due to previous "difficulties" with the plaintiff's "interactions with faculty and students," arrangements were made before the meeting for personnel from security and the Military Police "to be standing by for assistance if needed." Meyer Aff. ¶ 5; Deare Aff. ¶ 3. The defendants describe the plaintiff as "nervous" "pensive" and "unpredictable" during the meeting. Meyer Aff. ¶ 5; Deare Aff. ¶ 4. The complaint and the defendants' declarations differ markedly in their recounting of what happened at the meeting.

The plaintiff alleges that soon after the meeting started, the Chancellor began berating him, prompting the plaintiff to stand up and "calmly . . . proceed to walk toward the closed [office] door" to leave. Compl. ¶ 24. The plaintiff alleges that upon reaching the door, the defendants grabbed him by the arms and shoulders and told him he "was not going anywhere."

Compl. ¶ 25. The plaintiff was nevertheless "eventually able to break free from their grasp," but when he "opened the door, he was met with a group of security officials and Military Police Officers," who escorted him to his office to collect his belongings and then off the premises. Compl. ¶¶ 28-30.

By contrast to the plaintiff's recounting, the defendants state that soon after the Chancellor began advising the plaintiff about the terms of his placement on administrative leave, the plaintiff "lunged at" the Chancellor across a table then rushed toward the door where defendant Meyer was standing and "grabbed" defendant Meyer's hands. Meyer Aff. ¶¶ 7–8. Defendant Deare was not in the room at that time, having stepped out to check on the location of security personnel. Meyer Aff. ¶¶ 8-9; Deare Aff. ¶ 4. When the plaintiff "pushed his way through the door," he was able to see the Military Police and "immediately became more subdued and cooperative." Meyer Aff. ¶ 10; Deare Aff. ¶ 8. The plaintiff was then escorted by the Military Police and defendant Deare to his office where the plaintiff spent approximately one hour packing and moving into the hallway approximately 27 boxes of his personal belongings before being escorted out of the school building. Meyer Aff. ¶¶ 10–12; Deare Aff. ¶¶ 8–12; see also Compl, ¶ 30 ("Dr. Steel removed his belongings from his office"). The personal belongings were subsequently delivered to the plaintiff's home. Deare Aff. ¶ 11.

The plaintiff alleges that "[s]oon after the August 2011 incident, Dr. Steele began to feel pain in his right shoulder. Dr. Steele was later diagnosed with a torn rotator cuff." Compl. ¶ 33.

### B. <u>Procedural History</u>

The plaintiff filed the instant action in the Superior Court of the District of Columbia, asserting four claims for damages based on false imprisonment, assault and battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. *See* Not. of Removal Ex. A at 1, ECF No. 1-1. Pursuant to the Westfall Act, the defendants timely removed

the action to this Court. *See* Not. of Removal at 2, ECF No 1. A certification that defendants Meyer and Deare "were employees of the Government and were acting within the scope of their employment at the [CISA] at the time of the allegations stated in the complaint" accompanied the Notice of Removal.[1] Not. of Removal Ex. B, ECF No. 1-2.

Pending before the Court is the plaintiff's Motion to Remand to the Superior Court on the ground that the defendants "were acting as private individuals" and not within the scope of their employment as federal employees at the time of the alleged altercation, thus rendering the Westfall Act certification in this case "insufficient" and "invalid." Pl.'s Mem. in Supp. Mot. to Remand, ECF No. 5 at 6; Pl.'s Reply in Supp. of Pl.'s Mot. to Remand ("Pl.'s Remand Reply"), ECF No. 10, at 1. The defendants oppose any remand and have moved to dismiss the plaintiff's claims, pursuant to Federal Rule of Civil Procedure 12(b)(1), since upon substitution of the United States as the defendant in this action, the Court's subject matter jurisdiction is limited by the Federal Tort Claims Act ("FTCA"), under which the plaintiff's claims are not cognizable. *See* Def.'s Mem. Opp. Pl.'s Mot. to Remand & Supp. of Def.'s Mot. Dismiss ("Def.'s Mot. Dismiss") at 2, ECF No. 8-1.

## II. LEGAL STANDARD

### A. <u>Westfall Act Review</u>

The Supreme Court has succinctly summarized the operation of the Westfall Act, 28 U.S.C. § 2679(b)(1), which "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). This law "was explicitly designed to nullify the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988)," which held that federal employees

---

[1] The certification was made by Daniel F. Van Horn, Chief of the Civil Division, Office of the United States Attorney for the District of Columbia.

were immune to suits for damages under state tort law "only if the employees' conduct in question was within the scope of employment and discretionary in nature." *Kimbro v. Velten*, 30 F.3d 1501, 1504 (D.C. Cir. 1994). The Westfall Act "return[ed] government employees to their status before the Court's decision," making such employees "absolutely immune to suits for damages under state tort law so long as they were acting within the scope of their official duties." *Id.*

Thus, "when a Federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Osborn*, 549 U.S. at 229–30 (internal quotation marks omitted). Then, "[u]pon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee." *Id.* at 230. The case "is thereafter governed by the Federal Tort Claims Act (FTCA), 60 Stat. 842." *Id.*

In *Osborn*, the Supreme Court held that "once certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court, and the *court may not remand the suit to the state court*." *Id.* at 231 (emphasis added). The statutory language expressly dictates this result, stating that "[i]f the action commenced in state court, the case is to be removed to a federal district court, and the certification remains "conclusiv[e] . . . for purposes of removal." 28 U.S.C. § 2679(d)(2); *see also Jacobs v. Vrobel,* No. 12-5107, 2013 WL 3835832, at *1 (D.C. Cir. July 26, 2013) (noting certification automatically removes action to Federal district court for further proceedings). This ensures that resolution of issues regarding whether a federal employee was acting within the scope of his or her employment are made in federal court. *See Kimbro*, 30 F.3d at 1506 ("Congress obviously meant the Attorney General to have the ability to ensure

5

federal judicial adjudication over the issue of scope of employment of federal employees, and therefore, perhaps, even some measure of uniformity—at least as to the nature of federal employment patterns and scope of federal employment—even though various state tort laws were applied.").

  **B.** <u>**Motion to Dismiss Under 12(b)(1)**</u>

  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, Federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC,* 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish the court's jurisdiction over the subject matter by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Bolden-Bey v. U.S. Parole Comm'n*, 731 F. Supp. 2d 11, 13 (D.D.C. 2010) ("On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction"). When considering a motion under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon

such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations and quotation marks omitted). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating subject-matter jurisdiction, the court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert*, 974 F.2d at 197; *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

## III. DISCUSSION

### A. The Plaintiff's Motion for Remand

The plaintiff's only argument for remand is that the Attorney General's designee's certification is invalid because the defendants were not acting within the scope of their employment. *See* Pl.'s Remand Reply at 5–6. This argument is unavailing since the Court does not have the discretion to remand the matter when, as here, the Attorney General has provided a clear and unequivocal certification that the defendants are federal employees, who were acting within the scope of their employment. *See Osborn*, 549 U.S. at 241. Indeed, as the Westfall Act makes clear, the Attorney General's certification shall "conclusively establish scope of office or employment *for purposes of removal*." 28 U.S.C. 2679(d)(2) (emphasis added).

The plaintiff's bare assertion that the federal employees were acting in their individual capacities, rather than in the exercise of their federal job responsibilities, is not sufficient to defeat the Attorney General's certification and prompt a remand. *See Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991) (holding "conclusory allegations of . . . personal motive" insufficient to defeat Attorney General's certification). Moreover,

even when federal defendants, who allegedly engaged in tortious misconduct, deny that the misconduct ever occurred, the Westfall Act commands that the district court retain jurisdiction over the removed case. *See* 28 U.S.C. 2679(d)(2); *see also Osborn*, 549 U.S. at 244 (federal court jurisdiction retained when government denies occurrence of alleged misconduct or court concludes employee acted outside scope of employment).

Thus, even if the plaintiff were correct that defendants were acting outside the scope of their employment and were able to rebut the Westfall certification, this Court would nonetheless retain jurisdiction. In that event, the certification does not "preclude a district court from resubstituting the federal official as defendant for purposes of trial if the court determines, post removal, that the Attorney General's scope-of-employment certification was incorrect." *Id.* at 242. As the Supreme Court explained, "[c]onsiderations of judicial economy, convenience, and fairness to litigants make it reasonable and proper for a federal court to proceed to final judgment, once it has invested time and resources to resolve the pivotal scope of employment contest." *Id.* at 245. Therefore, the plaintiff's Motion to Remand is denied.

**B.** **The Defendants' Motion to Dismiss**

The plaintiff concedes that if the United States were substituted as the defendant in this action, the government's waiver of sovereign immunity is bound by the FTCA–which would bar his claims. Pl.'s Opp. Mot. Dismiss at 6, ECF No. 11 ("Plaintiff cannot dispute that, if substituted, the United States would be relieved of liability under the FTCA for the torts asserted and under relevant case law."). Thus, the viability of any claims by the plaintiff against the two defendants in their individual capacities hinges upon his challenge to the validity of the Attorney General's designee's certification. "The Supreme Court has held that the government's scope of employment determination under the Westfall Act is judicially reviewable regarding the

8

substitution of the government." *Stokes v. Cross*, 327 F.3d 1210, 1213 (D.C. Cir. 2003) (citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995)); *see also Haddon v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995) *abrogated on other grounds by Osborn*, 549 U.S. 225 (2007) (the certification "is *not* conclusive regarding substitution of the federal government. Instead, the federal court may determine independently whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant.").

The plaintiff seeks to rebut the Westfall certification – and avoid substitution of the United States as the defendant – by contending, first, that the certification is facially deficient, and, secondly, that the "Defendants cannot be credibly or logically be found to have been acting within the scope of their duties when the [sic] injured Dr. Steele on August 2, 2011." Pl.'s Opp. Mot. Dismiss at 6. The Court will address each argument in turn.

### 1. *The Certification Is Facially Valid*

First, as noted, the plaintiff deems the Attorney General designee's Westfall certification "insufficient" because "it does not determine the scope of the Defendants' respective employment . . . and does not provide facts to support the assertion." Pl.'s Remand Reply at 5. The plaintiff fails to grapple with the clear law that a Westfall Act certification "is *prima facie* evidence" that the defendant was acting within the scope of his employment, and that the burden rests on the plaintiff to rebut that evidence. *Jacobs*, 2013 WL 3835832, at *2; *Stokes*, 327 F.3d at 1214 ("A plaintiff challenging the government's scope-of-employment certification bears the burden of coming forward with specific facts rebutting the certification."); *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009); *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008); *Harbury v. Hayden*, 522 F.3d 413, 417 (D.C. Cir. 2008) ("In many cases, the Attorney General's certification begins and ends the scope-of-employment analysis."); *Council on Am. Islamic*

9

*Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (noting the plaintiff "bears the burden" of rebutting the certification with specific facts). Indeed, the Supreme Court has observed that it "is customary" for "the certification [to] state[] no reasons for the determination." *Osborn*, 549 U.S. at 233 (considering certification virtually identical to the instant certification).

Therefore, because the government is under no obligation to provide more information in its certification than it has already provided, the plaintiff's challenge that the certification is "insufficient" must fail.

### 2. *The Plaintiff Has Not Rebutted the Certification*

As stated above, the burden of challenging the correctness of a Westfall Act certification rests with the plaintiff. "[M]ere conclusory statements do not suffice" to rebut a certification. *Jacobs*, 2013 WL 3835832, at *3. Rather than "rely on mere conclusory allegations and speculation, [the plaintiff] must submit persuasive evidence—specific evidence or a forecast of specific evidence—that contradicts the certification." *Estate of Callaham ex rel. Foster v. United States*, No. 3:12-cv-579, 2012 WL 1835366, at *2 (D.S.C. May 21, 2012). It is "[o]nly if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing." *Id.* (quoting *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1155 (4th Cir. 1997)). In evaluating the plaintiff's "specific evidence" here, the Court has only the allegations in the complaint, which it will accept as true for the purposes of his challenge to the scope of employment certification. *See U-Haul Int'l, Inc. v. Estate of Albright*, 626 F.3d 498, 501 (9th Cir. 2010) (district court did not abuse discretion in denying plaintiff opportunity to present evidence that federal employee was not acting within scope of his employment since the

10

court upheld the Westfall certification "while assuming all of [plaintiff's] allegations to be true.").

When a plaintiff challenges the Westfall certification that the federal employee was acting within the scope of his or her employment, the courts apply the *respondeat superior* law of the state where the alleged tort occurred. *See Jacobs*, 2013 WL 3835832, at *3; *Stokes*, 327 F.3d at 1214. Here, the governing law is that of the District of Columbia. Under District of Columbia law, an employee's scope of employment is determined by applying the test established in the Restatement (Second) of Agency. *See Jacobs*, 2013 WL 3835832, at *3. Under this test, the employee's conduct falls within the scope of his employment when it (1) "is of the kind [the employee] is employed to perform;" (2) "occurs substantially within the authorized time and space limits [of the employment];" (3) "is actuated, at least in part, by a purpose to serve the master" and (4) "if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Wilson*, 535 F.3d at 711. The District of Columbia interprets this test broadly, such that the D.C. Circuit has characterized the test as "akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort." *Harbury* 522 F.3d at 422 n.4. Indeed, local District of Columbia courts have found "sexual harassment, a shooting, armed assault, and rape" within the scope of a defendant's employment. *Id.* at 422 (collecting cases).

The parties agree that the alleged tortious actions took place during the work day, in the CISA Chancellor's office. *See* Compl. ¶ 21; Def.'s Mot. Dismiss at 11. Thus, the second prong of the District of Columbia's test is met because the conduct occurred "substantially within the authorized time and space limits" of the employment. *Wilson,* 535 F.3d at 711. The dispute

11

centers on whether the other three prongs of the test are satisfied, namely: the kind of conduct, the intent to serve the employer, and the expectability of the use of force.

> *a. The Defendants Were Engaged In Conduct Incidental To That Which They Were Employed To Perform.*

As to the first prong, the plaintiff alleges that the defendants' conduct was "neither foreseeable nor in the general nature of their duties and responsibilities." Pl.'s Remand Reply at 7. In doing so, the plaintiff contends that because the defendants were "not hired for the purpose of physically restraining Plaintiff," their alleged contact with him must be outside the scope of their employment. This contention misconstrues District of Columbia law.

"To qualify as conduct of the kind he was employed to perform the defendant's actions must have *either* been of the same general nature as that authorized *or* incidental to the conduct authorized." *Council on Am. Islamic Relations*, 444 F.3d at 664 (quoting *Haddon v. United States*, 68 F.3d at 1424 (D.C. Cir. 1995)) (emphasis added). Conduct is "incidental" if it is "foreseeable" and it is "foreseeable" if it is a "direct outgrowth of the employee's instructions or job assignment." *See Haddon*, 68 F.3d at 1424.

The D.C. Circuit's recent decision in *Jacobs*, is instructive on this point. In *Jacobs,* the plaintiff accused her supervisor at the General Services Administration of defamation and interfering with the plaintiff's ability to secure other work. *Jacobs*, 2013 WL 3835832, at *1. The Attorney General's designee certified the defendant was acting within the scope of his employment, the case was removed to the district court, and the plaintiff's claims were dismissed under the FTCA. *Id.* at *2. On appeal, the plaintiff challenged the district court's scope of employment determination regarding the first and third prongs of the District of Columbia's scope of employment test. *Id.* at *3–4. In considering the first prong, the *Jacobs* court noted that it must "focus on the type of act . . . that allegedly gave rise to the tort, not the wrongful

12

character of the act." *Id.* at *3. The court found that whatever was said in telephone calls between the plaintiff's supervisors and plaintiff's prospective employers was "of the kind of conduct" the plaintiff's supervisor was employed to perform, i.e., responding to a prospective employer's request for a reference, regardless of the character of those statements. *Id.*, at *4. Thus, even wrongful conduct, foreseeably performed in conjunction with specified job duties, is "incidental" to the conduct the employee is hired to perform under District of Columbia law.

The defendants state their duties included "assisting the Chancellor with personnel matters" and that they were asked to attend the August 2011 meeting with the plaintiff by the Chancellor. Meyer Aff. ¶ 3; Deare Aff. ¶ 3. Thus, the defendants were in the Chancellor's office as "a direct outgrowth of [their] instructions." *See Haddon*, 68 F.3d at 1424. Any actions taken by the defendants while in the Chancellor's office for the meeting with the plaintiff were similarly "direct outgrowths" of their instructions to be present for the meeting. Just as in *Jacobs*, the wrongful nature of the conduct alleged here is irrelevant to the determination that the act was "incidental" to the conduct the defendants were hired to perform; the only relevant inquiry is whether the conduct was foreseeable.

The plaintiff has offered no facts to controvert the fact that the defendants were requested to be present in the August 2011 meeting; that it was part of the defendants' job duties to assist the Chancellor in personnel matters; and that they were asked to be in the meeting as part of their job duties. Thus, taking all of the allegations in the complaint as true and in light of the failure of the plaintiff to present any "persuasive evidence" regarding the defendants' job duties, the Court

finds the conduct alleged occurred, at the very least, incidentally to the kind of conduct the defendants were employed to perform.[2]

### b. The Defendants Acted At Least Partially Out Of A Desire To Serve Their Employer.

As to the third prong—whether the actions complained of were undertaken with the intent to serve the employer—the plaintiff offers nothing but conclusory statements that the defendants "simply did not like the fact that Dr. Steele decided to end the meeting." Pl.'s Remand Reply at 11. To meet the third prong of the District's test, it is necessary to show the employee's act was "solely for the servant's personal benefit" and "not done for the employer at all." *Schecter v. Merchs. Home Delivery, Inc.*, 892 A.2d 415, 428 (D.C. 2006). Again, *Jacobs* is illustrative. In *Jacobs*, the plaintiff asserted that her GSA supervisor gave her negative references to potential employers and was therefore not acting to serve the GSA. *Jacobs*, 2013 WL 3835832, at *4. Noting the complaint specifically alleged that the supervisor was responding to such calls on his employer's behalf, the court found that the supervisor was motivated, at least in part, to serve the employer. *Id.* The relevant inquiry for the third prong is whether the defendant was motivated *at least in part* by a desire to serve his employer. *Id.*; *Schecter*, 892 A.2d at 428. Thus, even if the defendants did, as the plaintiff alleges, have an ulterior motive to prevent the plaintiff from leaving the meeting, the plaintiff must offer evidence that the defendants did so without any desire to serve their employer simultaneously.

The plaintiff has offered no such evidence. There are no allegations of any former disputes or conflicts between the defendants and the plaintiff which might have given the defendants the motive to assault the plaintiff. Taking every allegation in the complaint as true,

---

[2] The plaintiff references "testimony that Colonel Bell provided during the investigation of an administrative complaint filed by Dr. Steele," Pl.'s Remand Reply at 9, but no such testimony has been filed for consideration with this Court and, in any event, based on the general description provided, such evidence would make no difference.

14

the statements attributed to the defendants likewise belie the plaintiff's assertion that the defendants were not acting, at least in part, to serve their employer: "Dean Meyer and Deane Deare . . . told [the plaintiff] the *meeting was not over* and that he 'was not going anywhere.'" Compl. ¶ 25 (emphasis added). Contrary to the plaintiff's conclusory assertion that the defendants "simply did not like the fact that Dr. Steele decided to end the meeting," Pl.'s Remand Reply at 11, telling the plaintiff that they were keeping him in the meeting until the meeting's conclusion indicates the defendants were acting at least partially out of intent to serve the employer's purpose. Thus, the plaintiff has failed to present persuasive evidence challenging the third prong of the District of Columbia's scope of employment test.

### c. The Defendants' Use Of Force Was Not "Unexpectable"

Finally, as to the fourth prong, the plaintiff again offers merely conclusory statements that "it is not credible to accept that [the defendants'] employer could foresee that the Defendants would deviate from the function of their duties and physically prevent Dr. Steele from leaving the meeting." Pl.'s Remand Reply at 12. On the contrary, both parties agree that the defendants and the Chancellor were so concerned about the plaintiff's reaction to this meeting that they required security personnel to be present nearby. Meyer Aff. ¶ 3; Deare Aff. ¶ 3; Compl. ¶ 28.

Given the necessity of having "armed Military Police Officers," Compl. ¶ 29, near the meeting, it cannot be credibly asserted that the use of force in conjunction with this meeting was "unexpectable." The presence of the officers instead points to the conclusion that the possible need for the use of force was anticipated. Consequently, the fourth prong is amply met. Therefore, the plaintiff has failed to meet his burden of putting forth sufficient facts to allege that the defendants were acting outside the scope of their employment.[3]

---

[3] Alternatively, the plaintiff asks for "the opportunity to obtain discovery and an evidentiary hearing on the issue." Pl.'s Remand Reply 15. Since the plaintiff has failed to raise a single material fact in dispute that would lead this

## C. The Plaintiff's Claims Are Not Cognizable Under The FTCA And Must Therefore Be Dismissed

"Under the FTCA, certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose transforms an action against an individual federal employee into one against the United States." *Hui v. Castaneda*, 559 U.S. 799, 810 (2010) (internal quotations omitted). The United States will be substituted for the defendants, pursuant to 28 U.S.C. § 2679(d)(2), and the FTCA is the plaintiff's sole route for recovery.[4] The First and Second count in the plaintiff's complaint assert claims for false imprisonment and assault and battery, Compl. ¶ 35–50, while the infliction of emotional distress claims in counts Three and Four "arose out of" the false imprisonment count. *See* Compl. ¶ 53 ("Dean Meyer and Dean Deare acted with such extreme and outrageous conduct *when they falsely imprisoned* Dr. Steele") (emphasis added); ¶ 58 (same).

The FTCA only grants federal courts jurisdiction over claims against the sovereign subject to certain exceptions, including those embodied in 28 U.S.C. § 2680. *Sloan v. U.S. Dep't of Housing and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001). As a sovereign, the United States has not waived liability for the torts of false imprisonment, assault and battery, or any claims arising out of those torts. *See* 28 U.S.C. § 2680(h) (FTCA "shall not apply to… [a]ny claim arising out of assault, battery, false imprisonment"); *see also Ford v. Mitchell*, 890 F. Supp. 2d 24, 34–35 (D.D.C. 2012) (dismissing false arrest and false imprisonment claims as not cognizable under the FTCA); *Banks v. Harrison*, 864 F. Supp. 2d 142, 147-148 (D.D.C. 2012)

---

Court to believe the defendants were acting outside of the broad scope of employment under District of Columbia law, the plaintiff's request is denied.

[4] The defendants also argue the plaintiff failed to exhaust his administrative remedies, as required under 28 U.S.C. § 2675(a). Def.'s Mot. Dismiss at 17. As this case will be dismissed under Federal Rule of Civil Procedure 12(b)(1), it is unnecessary to address this argument.

(dismissing assault claims as not cognizable under FTCA); *Tolson v. Stanton*, 844 F. Supp. 2d 53, 57 (D.D.C. 2012) (FTCA "expressly excludes claims 'arising out of assault and battery'"); *Koch v. United States*, 209 F. Supp. 2d 89, 94 (D.D.C. 2002) (dismissing plaintiff's assault and intentional infliction of emotion distress claims as not cognizable under the FTCA); *Watkins v. Holt*, No. 05-1565, 2006 WL 2331090, at *1 (D.D.C. Aug. 10, 2006) ("By its terms, the FTCA does not apply to any claim arising out of . . . false imprisonment.") (internal quotation marks omitted).[5] Thus, as the plaintiff concedes, he cannot recover on his claims of false imprisonment and assault and battery, or for his related claims of negligent or intentional infliction of emotional distress arising out of those torts, since they are all expressly excluded from allowable tort claims under the FTCA. *See* Pl.'s Opp. Mot. Dismiss at 6 ("Plaintiff cannot dispute that, if substituted, the United States would be relieved of liability under the FTCA for the torts asserted."). Therefore, these claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the reasons explained above, the plaintiff's Motion for Remand is DENIED. Pursuant to 28 U.S.C. § 2679(d)(2), the United States shall be substituted for the federal employee defendants, who were certified by the Attorney General's designee to be "acting within the scope of their employment . . . at the time of the allegations stated in the complaint." Not. of Removal Ex. B. As explained above, under the FTCA, 28 U.S.C. § 1346(b)(1) and the exceptions thereto, including those found in 28 U.S.C. 2680(h), the Court lacks subject matter

---

[5] The "arising out of assault" exception to the FTCA does not apply "to acts or omissions of investigative or law enforcement officers of the United States Government." *See* 28 U.S.C. 2680(h) (2006). The plaintiff nowhere contends that this proviso on the "arising out of assault" exception might apply in the instant case and could not do so because defendants Meyer and Deare do not appear to be law enforcement officers within the definition of the FTCA and, indeed, had arranged for law enforcement officers to be present at the meeting to fulfill that function as necessary. *See* Meyer Aff. ¶ 5; Deare Aff. ¶ 3.

jurisdiction to hear the plaintiff's claims. Therefore, the defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is GRANTED.

An appropriate order accompanies this Memorandum Opinion.

Date: August 29, 2013

_____
BERYL A. HOWELL
United States District Judge